584 So.2d 881 (1991)
Vaughn Gilbert JOHNSON, Jr.
v.
STATE.
CR 89-843.
Court of Criminal Appeals of Alabama.
January 18, 1991.
On Return to Remand April 26, 1991.
Rehearing Denied June 28, 1991.
*882 Cecil Matthews, Guntersville, for appellant.
*883 Don Siegelman, Atty. Gen., and Margaret S. Childers, Asst. Atty. Gen., for appellee.
TYSON, Judge.
Vaughn Gilbert Johnson, Jr., was convicted on November 2, 1989, for the crime of murder, § 13A-6-2, Code of Alabama 1975, and was sentenced to life imprisonment.
The appellant gave timely notice of appeal. The appellant's brief in this cause originally was due on June 22, 1990. Since that time, appellant's retained attorney has received one seven-day extension and three enlargements of time in which to file his brief.
Appellant is constitutionally entitled to effective assistance of counsel, which includes the filing of an appellate brief on first appeal as a matter of right. Evitts v. Lucy, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); Ross v. Noffett, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).
Therefore, the submission of this case is hereby set aside and this cause is remanded to the circuit court for that court to determine whether appellant's retained counsel intends to continue representing the appellant and, if so, to inquire into the reason for the failure to file a brief in this court. The trial court shall take whatever remedial action is deemed necessary to ensure that an appellate brief is filed in this case, including the appointment of new and different counsel. If the trial court should determine that new appellate counsel is required, the court should ascertain whether the appellant is indigent and whether he desires appellate counsel. If so, the trial court shall appoint counsel and aid counsel in obtaining a copy of the appellate record. In this situation, the time for filing briefs shall begin to run from the date of the appointment of new counsel. Due return should be made to this court of the action taken, within 30 days from the date of this opinion.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

ON RETURN TO REMAND
TYSON, Judge.
Vaughn Gilbert Johnson, Jr., was indicted for the offense of murder. The jury returned a verdict of "guilty of murder." A sentencing hearing was conducted at which time the appellant was sentenced to life imprisonment, and his application for probation was denied. Pursuant to § 15-23-17 Code of Alabama 1975, the appellant was assessed a victim compensation assessment of $3,000.00 and court costs were taxed to him.
On April 8, 1989, the appellant, Johnson, picked up the victim, Rebecca Kay Salter Culbert, at her home on Star Route in Albertville, Alabama, in his automobile. They drove to a wooded area one block away from the residence and parked. Sometime during the evening Ms. Culbert either exited the car or was taken out of the car by the appellant. She was subsequently run over several times with the automobile which the appellant had driven to the spot. In addition to wounds incurred when she was run over by the vehicle, reports revealed that the victim had been struck with a blunt instrument over the head and strangled with a pair of nunchakus, a martial arts weapon. She died shortly thereafter.

I(a)
The appellant contends that the trial court committed reversible error in failing to grant his motion for a judgment of acquittal on the grounds that the indictment was fatally defective. Specifically, the appellant argues that the indictment failed to allege the means by which the murder was committed. The indictment reads as follows:
"The Grand Jury of said County charge that before the finding of this Indictment Vaughn Gilbert Johnson, Jr., whose name to the Grand Jury is otherwise unknown, did intentionally cause the death of another person Rebecca Kay Salter Culbert, by multiple blunt force injuries, in violation of § 13A-6-2 of the *884 Code of Alabama, 1975, as last amended."
(R. 609.)
This court in Harrison v. State, 384 So.2d 641, 643 (Ala.Cr.App.1980), held that:
"Pursuant to Code § 15-8-25, an indictment must state the facts constituting the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is intended. An indictment must likewise apprise the accused not only of the nature of the offense, but also of the particular act or means by which it was committed. Chambers v. State, Ala.Cr.App., 364 So.2d 416, cert. denied, Ala., 364 So.2d 420 (1978). See also: Andrews v. State, Ala.Cr.App., 344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977). However, an averment of the means, although one of substance and not of form, is not a constituent or essential element of the offense. The omission of such would render an indictment merely viodable rather than void. Consequently, such a deficiency must be timely and specifically raised by demurrer. Gaines v. State, 146 Ala. 16, 41 So. 865 (1906); Whitt v. State, Ala.Cr.App., 370 So.2d 730, reversed on other grounds, Ala., 370 So.2d 736 (1978); Jeter v. State, Ala.Cr.App., 339 So.2d 91, cert. denied, Ala., 339 So.2d 95 (1976)."
In this case the appellant waived arraignment and pleaded not guilty on August 29, 1989. By order at arraignment the appellant was allowed 14 days to file special pleas or motions. (R. 615.)
However, it was not until November 2, 1989, after the State had rested, that the appellant objected to the indictment as being fatally defective. Again in his motion for a new trial the appellant alleged that the indictment failed to specify the means by which the murder was committed.
According to A.R.Crim.P.Temp. 16.2(a) and 16.3, an objection to a defective indictment must be raised at or before arraignment or by a date set by the trial court. The rules read as follows:
"Rule 16.2. Objections and Defenses Which Must Be Raised by Motion
"(a) Objections and Defenses Which Must Be Raised by Pre-trial Motion. Objections based on defects in the commencement of the proceeding or in the charge, other than lack of subject matter jurisdiction or failure to charge an offense, may be raised only by pre-trial motion made in accordance with Temporary Rule 16.3.
"Rule 16.3. Time of Making Motions
"(a) Pre-trial Motions. Any motion which must under Temporary Rule 16.2 be made before trial must be made:
"(1) In circuit court at or before arraignment or by such later date as may be set by the court; ...."
Furthermore, irregularities in an indictment which do not render the indictment void are waived if not raised either before arraignment or by such later date specified by the trial court. Beals v. State, 533 So.2d 717 (Ala.Cr.App.1988); Harrison v. State, 384 So.2d 641 (Ala.Cr.App.1980); Ex parte Horton, 456 So.2d 1120, 1121-22 (Ala.1984).
By order at arraignment the appellant was given 14 days to file special pleas or motions. The appellant failed to meet this deadline.
Therefore, we find no error on the part of the trial court in denying the appellant's motions for judgment of acquittal on this ground.

(b)
The appellant also contends that there was a fatal variance between the allegations in the indictment and the proof presented at trial as to the actual cause of death. A fatal variance exist only where the State fails to adduce any proof of a material allegation of the indictment or where the only proof adduced is contrary to a material allegation in the indictment. Eady v. State, 369 So.2d 841, 843 (Ala.Cr. App.1979), reversed on other grounds, Ex parte Alexander, 475 So.2d 628 (Ala.1985).
The proof was sufficient to support the offense charged in the indictment. See Perry v. State, 549 So.2d 119, 121 (Ala.Cr. App.1988). The indictment alleged that the appellant intentionally caused the death of *885 the victim by inflicting multiple blunt force injuries. The State presented evidence that the appellant inflicted multiple blunt force injuries, and Dr. Embry, who performed the autopsy, testified that, in his opinion, the victim died from these injuries.

II
Next, the appellant contends that the transcript of the conversation between him and his wife that occurred in the Albertville detectives' room in the presence of Detectives Edsel Whitten and Tommy Cole was introduced in violation of the marital privilege. Specifically, he argues that this transcript was improperly admitted because the police did not advise Mrs. Johnson of her marital privilege.
However, the marital privilege for confidential communications has no application here. This court in Epps v. State, 408 So.2d 562, 565 (Ala.Cr.App.1981), held that:
"The privilege exists only for confidential communications or `acts performed with the confidence of the marriage in mind.' Arnold v. State, 353 So.2d 524, 527 (1977). The marital communication loses its confidential character (and thus its privilege status) if it is made in the presence of third parties. Caldwell v. State, 146 Ala. 141, 41 So. 473 (1906)."
See also Howton v. State, 391 So.2d 147 (Ala.Cr.App.1980), which held that testimony of an investigator concerning contents of a letter defendant's wife had sent to defendant while he was incarcerated did not violate the rule governing privileged communications, in that such rule does not operate to exclude testimony of a third party who overheard private conversation, even if such conversation was overheard while spying or eavesdropping.
In this case, the conversation was not private. It was a conversation in the open presence of Detectives Whitten and Cole.
Furthermore, the record reveals that at some point Mrs. Johnson had been advised of her rights: "They read me my rights and I had no idea what for." (R. 783.) See McCoy v. State, 221 Ala. 466, 129 So. 21 (1930), holding that prior voluntary testimony at a preliminary hearing by the nonaccused spouse, although made without having been advised of her privilege not to testify, may be admitted through a third party who heard this testimony even where the spouse invokes the privilege not to testify at the subsequent trial.
The trial court did not err in admitting this testimony.

III(a)
Next, the appellant contends that it was reversible error to admit the evidence obtained as a result of two searches of the appellant's automobile. On April 12, 1989, the appellant made an out-of-court statement to Detective Whitten of the Albertville Police Department. Subsequent to this statement, the investigation began to focus on the appellant. The day after the appellant's statement, Detective Whitten interviewed a neighbor of the appellant's grandmother and learned that the day after the victim was last seen alive the appellant had been in front of his grandmother's house with a rag, wiping the fender of his automobile and looking underneath his automobile.
This information prompted Detectives Whitten and Cole to go to Georgia where the appellant was living with his mother-in-law to see if they could secure the appellant's car and look for evidence to determine whether the car had been used in the murder of Ms. Culbert.
When the car was located, it was being driven up to the appellant's mother-in-law's house by David Adkins. Mr. Adkins was in sole physical possession of the car. Mr. Adkins was approached by Detectives Whitten and Cole about their examining the car, and he drove it to the local sheriff's office. He voluntarily consented to the search of the vehicle, after having been advised of his rights not to have the vehicle searched without a search warrant. Furthermore, Mr. Adkins executed a permission to search form which indicated that the vehicle was under his care, custody, and control.
The appellant argues that the trial court erred in denying his motion to suppress the *886 evidence obtained during the search of the undercarriage of the vehicle. Specifically, he argues that Mr. Adkins's consent was not sufficient in that he was not the owner of the vehicle. The record reveals that Mr. Adkins was advised of his rights not to have the automobile searched without a search warrant. Furthermore, there was no evidence of any deception or coercion or assurances on the part of the officers.
As cited by the trial court, 334.01(3)(b) of McElroy's Alabama Evidence states that the general rule is as follows:
"... A defendant has no constitutionally protected right of privacy where he does not have exclusive possession and control over the place searched. The person who does have present, exclusive possession and control over the place in question, or who shares the premises co equally with the person claiming to be aggrieved, may give consent to search."
C. Gamble, McElroy's Alabama Evidence § 334.01(3)(b) (3d ed. 1977); See also Myrick v. State, 45 Ala.App. 162, 227 So.2d 448, 450 (1969) (upheld a search consented to by defendant's father to whom defendant had given the keys to his car); and Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (upheld consent given by occupant of car who indicated that the car belonged to his brother).
The evidence indicates that Mr. Adkins was in sole possession and control of the vehicle and that he voluntarily consented to the search. The appellant offered no evidence tending to show that Mr. Adkins did not have authority to consent to the search. The evidence found as a result of the search was therefore properly admitted. See also Illinois v. Rodriquez, 497 U.S. ___, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (reasonable belief of police officer that third party giving consent to search had common control over area searched makes search reasonable notwithstanding fact that third party did not, in fact, have such control).

(b)
After the initial search of the automobile yielded human hairs in the right front wheel and fibers under the front bumper and the undercarriage, the vehicle was confiscated and impounded. A week later, after receiving an oral report from the forensics laboratory concerning the initial evidence, the officers returned to Georgia and obtained further evidence from the impounded automobile in the presence of Georgia officers.
The appellant contends the trial court also erred in admitting the evidence obtained from this second search. Specifically, the appellant contends that this search was not supported by either consent or a warrant and that the chain of evidence was not sufficiently established. However, the appellant's counsel never moved to suppress any evidence from the second search of the automobile nor did appellant's counsel object to the admission of this evidence. In fact, when the evidence was offered at trial appellant's counsel stated that he had no objection to it. Furthermore, appellant's counsel stipulated to the admissibility of this evidence with respect to the chain of custody.
In order for this court to review an alleged erroneous admission of evidence, a timely objection must be made to the introduction of the evidence, specific grounds for the objection should be stated, and a ruling on the objection must be made by the trial court. Gibbs v. State, 342 So.2d 448 (Ala.Cr.App.1977).
Because no objection was made the appellant has not preserved this question for review.

IV
The appellant next contends that the trial court erred in denying his post trial motion for a judgment of acquittal because the evidence was insufficient to show intentional murder.
This court stated in Linzy v. State, 455 So.2d 260 (Ala.Cr.App.1984):
"The standard of review in determining sufficiency of evidence is whether evidence existed at the time appellant's motion for acquittal was made, from which the jury could by fair inference find the accused guilty. Stewart v. *887 State, 350 So.2d 764 (Ala.Crim.App.1977); Hayes v. State, 395 So.2d 127 (Ala.Crim. App.), writ denied, Ex parte Hayes, 395 So.2d 150 (Ala.1981). Stated differently, the test is `whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis, but whether a jury might reasonably so conclude.' Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978), cert. denied, 368 So.2d 877 (Ala.1979); United States v. Black, 497 F.2d 1039 (5th Cir.1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971). In deciding this issue, we are required to view the evidence presented in the light most favorable to the state. Hayes, supra; Bass v. State, 55 Ala.App. 88, 313 So.2d 208 (1975).
"`Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court.' Cumbo, supra; Cannon v. State, 17 Ala.App. 82, 81 So. 860 (1919). Our function is not to be factfinders, however tempting that may sometimes be. We must not substitute ourselves for jurors, nor play their role in the criminal process. Jury verdicts should not be disturbed unless they are not based upon evidence sufficient to meet the test set out above."
Linzy, 455 So.2d at 262.
After a review of the record, we find that sufficient evidence existed from which the jury might have reasonably excluded every reasonable hypothesis other than that of the appellant's guilt in this cause.
The trial court did not err in denying the appellant's motion for a judgment of acquittal.

V(a)
Last, this appellant argues that the statement that he gave to Detectives Cole and Whitten upon arriving at the Albertville Police Department after his arrest and the statement he made to his wife immediately thereafter were improperly admitted because he was not re-advised of his Miranda rights immediately prior to either statement. At the time of the appellant's arrest in Dallas, Georgia, he was given his Miranda rights by Billy Gamel, an officer in Georgia. His Miranda rights were read to him and a written copy of these rights was given to the appellant, which he signed on April 28, 1989, at 9:50 a.m., central standard time. Present during the Miranda warnings were Detective Tommy Cole, Police Chief Jerry Mitchell and Detective Edsel Whitten all of the Albertville Police Department. Detective Whitten testified that the appellant was not coerced or threatened or induced to make any statements. Nor were any promises or assurances given to the appellant for any statement. The appellant then signed a waiver of extradition before Judge Arthur Fudger of the Paulding County Georgia Superior Court. The appellant was then taken back to Alabama. They arrived at the Albertville Police Department around 4:00 p.m.
Detective Whitten testified that immediately upon arrival at the police department, the appellant stated that he wanted to talk to Detective Cole alone. The appellant agreed to have Detective Whitten return when Detective Cole indicated that it would be better if both officers were present so that they could be sure of what the appellant said. When Detective Whitten returned, the appellant immediately volunteered a statement.
The appellant was not re-advised of his rights after he returned to Alabama. However, no attempt was ever made to question the appellant until he asked to speak with Detective Cole. Also, Detective Whitten testified that between the time of the Miranda warning and his statement, no threats were made, nor was he coerced, nor had any promises or assurances been given to the appellant.
Furthermore, Detective Cole testified that he told the appellant he did not have to make a statement and that he was under no obligation to talk.
In Jones v. State, 47 Ala.App. 568, 258 So.2d 910 (1972), it was held that Miranda warnings are not required to be given before each separate interrogation of a defendant *888 after a valid waiver of his rights has been made. See also C. Gamble, McElroy's Alabama Evidence § 201.09 (3d ed. 1977).
The evidence clearly shows that the appellant was given his Miranda rights before he left Georgia. The appellant stated that he understood his rights. Appellant's statement to Detectives Cole and Whitten occurred not later than six hours after he was given the Miranda warnings. Furthermore, Detective Cole told the appellant that he did not have to make the statement.
This court has repeatedly rejected the position that the failure to repeat the Miranda warning before each separate interrogation, when the same has once been given and a waiver made, precludes the admission into evidence of any inculpatory response. Smoot v. State, 383 So.2d 605 (Ala.Cr.App.1980); Fagan v. State, 412 So.2d 1282 (Ala.Cr.App.1982) (statement not invalid by lapse of three and one-half hours after Miranda warnings were given); Cordle v. State, 53 Ala.App. 148, 298 So.2d 77 (1974) (confession not invalid by lapse of four hours and twenty minutes); Love v. State, 372 So.2d 414 (Ala.Cr.App. 1979) (admissibility of a statement made six hours after only full Miranda warnings had been given).
In this case, the time lapse was not excessive nor were the events occurring in the intervening time period so out of the ordinary as to have required repetition of the appellant's Miranda warnings.
The trial court did not err in admitting the post-arrest statement.

(b)
The appellant contends that the statements he made to his wife were also improperly admitted because he was not re advised of his Miranda rights. The conversation between the appellant and his wife occurred immediately after his statement to Detectives Cole and Whitten. The appellant's wife arrived at the police department while the appellant was giving his statement. Detectives Cole and Whitten asked the appellant if he wanted to talk to her and he said that he did. His wife came into the detectives' room, and she and the appellant talked in the presence of the detectives.
For the above reasons, renewed Miranda warnings were not required for the admissibility of this statement.
Therefore, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.