[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1085 
The appellant, Hunt, was indicted and convicted for the capital offense of "[m]urder in the first degree when the killing was done for a pecuniary or other valuable consideration or pursuant to a contract for hire." Ala. Code § 13A-5-31 (a)(7) (1975). Sentence was life imprisonment without parole. The evidence presented at trial established that Hunt and Danny Ray Williams[1] stalked the victim, James A. Taylor, for several months pursuant to a contract for hire made with James Alvin Inzer;[2] that on March 21, 1981, Hunt and Williams, traveling in Williams's automobile, drove alongside Taylor's pickup truck and Williams shot Taylor at point-blank range with a sawed-off shotgun; and that the consideration for this murder was $1,500, which was paid.
 I
In his first assignment of error, Hunt alleges the testimony of Officer Stuart was illegal; he contends that the officer's name was not given to him pursuant to his pretrial motion requesting a list of the State's prospective witnesses. The trial court had granted Hunt's motion, but had left the method of compliance to the attorneys' discretion. The attorneys agreed that the list of State's witnesses was to be provided by the subpoena list or by notice. On the Friday before the trial began on Monday, the State filed a request that a subpoena issue for Stuart; however, Stuart's name was inadvertently placed on the subpoena list as a witness for the defense rather than as a witness for the State. When Stuart was offered as a witness on Thursday, defense counsel interposed no objection. Defense counsel remained silent during Stuart's direct examination, and after cross-examining the witness, he moved for a mistrial. The motion was denied.
We need not decide if this inadvertence amounted to a violation of the court's order, for even assuming such, we conclude that a mistrial was not warranted under the circumstances before us. A high degree of "manifest necessity" for granting of a mistrial must be demonstrated before a mistrial should be granted. Woods v. State, 367 So.2d 982 (Ala. 1978); Ala. Code § 12-16-233 (1975). "The entry of a mistrial *Page 1086 
is not lightly to be undertaken. . . . [T]he entry should be only a last resort, as in cases of otherwise ineradicable prejudice." Thomas v. Ware, 44 Ala. App. 157, 161, 204 So.2d 501
(1967) (emphasis in original).
Furthermore, Hunt's motion was properly denied because defense counsel knew of the ground for complaint at the moment Stuart was offered as a witness, yet counsel failed to interpose a timely and appropriate objection. See e.g.,Oatsvall v. State, 57 Ala. App. 240, 327 So.2d 735 (1975), cert.denied, 295 Ala. 414, 327 So.2d 740 (1976) (wherein the court deemed the appellant's request for mistrial too late when it was made after the appellant sat silent while his full statement was related to the jury). After a question is asked and a responsive answer is given, an objection comes too late and the trial court will not be put in error absent a motion to exclude and an adverse ruling thereon. See e.g., Borden v.State, 444 So.2d 402 (Ala.Cr.App. 1983). Hunt's motion for mistrial was properly denied because it came after Stuart was offered as a witness, after he was examined by the prosecution, and after he was cross-examined.
Moreover, Stuart's testimony properly remained before the jury for its consideration. A motion for mistrial does not serve the same function as a mere objection or motion to strike; neither does it include a motion to strike or exclude testimony as a lesser prayer for relief. Farley v. State,437 So.2d 639 (Ala.Cr.App. 1983).
 II
Hunt seeks reversal on the additional contention that the trial court erroneously allowed co-defendant Williams's notebook into evidence, on the ground that the prosecution failed to timely produce it. Upon review of the discovery motion and the trial court's order granting such motion, we find, as the trial court found, that the notebook was not among the items ordered to be produced. Hence, the trial court's order was not violated and the notebook was properly admitted into evidence. See e.g., Lewis v. State, 335 So.2d 426
(Ala.Cr.App. 1975), cert. denied, 335 So.2d 429 (Ala. 1976).
 III
Hunt further attacks the admissibility of Williams's notebook on the ground that it constitutes hearsay. Even if the notebook is hearsay, reversible error cannot be predicated upon its introduction into evidence for the following occurred without objection prior to the State's offer of the notebook:
 "Q. [Prosecutor] I'd like to direct your attention to one specific page in this book, and I'll ask you, is there a name there in that book?
"A. [Officer Emerson] Yes, sir.
"Q. What's the name?
"A. Red Hunt.
"Q. And there's some phone numbers underneath it?
"A. Yes, sir.
"Q. What are the phone numbers?
 "A. 595-0589, and it has one that says shop, 595-3660, and then it has 833-8018.
 "Q. Was that in there the night you took it in your possession on April 1st?
"A. Yes, sir.
 "Q. Is it in the same condition today, or substantially the same condition today as that was at the time you received it from Danny Williams on April 1, 1981?
"A. Yes, sir."
Subsequently, the exhibit was offered and only then did counsel object. The formal introduction of this notebook, which was preceded by detailed testimony concerning the contents of the notebook, represented no more than the sum of the preceding testimony and, consequently, did not cause reversible error.Ware v. State, 409 So.2d 886, 893 (Ala.Cr.App. 1981), cert.dismissed, 409 So.2d 893 (Ala. 1982); Hayes v. State,395 So.2d 127, 147 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 150 (Ala. 1981). It is well *Page 1087 
established that it is not error to allow facts to be shown over objection when they have already been proven without objection. Kendrick v. State, 55 Ala. App. 11, 312 So.2d 583
(1975). Accordingly, we find that the formal introduction of the notebook into evidence was not error.
 IV
Hunt contends that the trial court erroneously granted the State's motion in limine, which prevented the defense from impeaching a State's witness by the introduction of the witness's prior adjudication as a youthful offender. Hunt specifically attacks the prosecution's standing to assert the witness's prior youthful offender status; however, this assertion is based upon the erroneous assumption that such impeachment would have been proper, if it had been allowed. Section 15-19-7 (a), Code of Alabama 1975, expressly provides that youthful offender determination shall not be deemed a conviction of a crime. Accordingly, such adjudication does not fall within the ambit of § 12-21-162 (b), Code of Alabama 1975, which provides for the attack on a witness's credibility by introduction of the witness's conviction for a crime involving moral turpitude. See generally Daniels v. State, 375 So.2d 523
(Ala.Cr.App. 1979). Thus, the witness's prior status as a youthful offender was properly withheld from the jury's attention.
This court is well aware of the United States Supreme Court's opinion in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105,39 L.Ed.2d 347 (1974), wherein that Court held that the accused's right of confrontation of witnesses requires that the accused be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness's probationary status as a juvenile delinquent. In the case sub judice, the witness's probationary status had terminated five years before the trial; hence, unlike the juvenile in Davis, the witness could not have been biased as a probationer in a vulnerable status. The attempted impeachment was a general attack on his credibility, not an attempt to reveal possible bias. Impeaching evidence used to attack credibility generally has considerably less probative value than evidence which suggests false or influenced testimony because of bias resulting from fear of possible jeopardy to the witness's probation. See id., 94 S.Ct. at 1112-1113 (Stewart, J., concurring). For these reasons, Davis v. Alaska is not controlling in the case before us.
In answer to Hunt's contention that the prosecution had no standing to assert the protection of § 15-19-7 in favor of a prosecution witness, we note that the Supreme Court in Davis v.Alaska, 415 U.S. at 319, 94 S.Ct. at 1111, recognized the State's interest in protecting and preserving the anonymity of a juvenile offender. Likewise, this court recognizes such interest in preserving the anonymity of a youthful offender as directed by § 15-19-7; Hunt's contention is frivolous in light of the statutory mandate and the strong public policy behind the statute's enactment of protecting those who fall within its ambit from the stigma and practical consequences of a criminal prosecution and conviction. Cf. Raines v. State, 294 Ala. 360,317 So.2d 559 (1975). Furthermore, a party has an obvious and unquestionable interest in preventing its witness from being improperly impeached.
 V
In his last assignment of error, Hunt contends that the prosecution improperly commented on Hunt's failure to call his wife and children as witnesses to substantiate his explanation that he was at home on the night of the murder. He maintains that this comment violated the general rule that one party may not comment unfavorably on the other party's failure to produce a witness supposedly favorable to that party if the witness is equally available to both sides.
The propriety of this comment rests upon the determination of "availability." In ascertaining such, we make two inquiries: first, we determine if Hunt had a *Page 1088 
superior means of knowing of the existence and identity of the absent witnesses, and secondly, we determine if the relationship of the absent witnesses with Hunt would reasonably be expected to affect the witnesses' personal interest in the outcome of Hunt's trial, thus making it natural to expect that they would testify against the State and in favor of Hunt.Brown v. State, 50 Ala. App. 471, 280 So.2d 177, cert. denied,291 Ala. 774, 280 So.2d 182 (1973).
In considering our first inquiry, we note that the absent witnesses could not have established an "alibi" for the crime for which Hunt was convicted, since the crime consisted of a conspiracy evolving over several months and terminating with the accomplished murder. However, they are likened to alibi witnesses, since they could have allegedly offered support to Hunt's alibi for the night of the murder. Consequently, we are guided by reasoning of Henry v. State, 355 So.2d 411
(Ala.Cr.App. 1978). In Henry, the court observed that because the accused is not required to notify the prosecution of an alibi defense, the prosecution generally does not know of the existence of an alibi until it is revealed from the witness stand. Upon its observations, the court concluded that the accused is generally in a superior position to know of the existence and identity of alibi witnesses. Consistent with this reasoning, we conclude that Hunt possessed this superior knowledge.
In considering the factor of the relationship of the witnesses with the accused, we observe that the absent witnesses to whom the comment was directed were Hunt's wife and children. Arising from this familial relationship is the natural assumption that these witnesses would have been hostile to the prosecution and personally interested in the outcome of the trial. Thus, we cannot conclude that they would have been as available to the prosecution as to Hunt. See e.g., Waller v.State, 242 Ala. 1, 4 So.2d 911 (1941) (relationship of father/son); Oliver v. State, 440 So.2d 1180 (Ala.Cr.App. 1983) (relationship of girlfriend/boyfriend).
In evaluating these two factors, we conclude that since Hunt's wife and children were not equally available to the prosecution, but were only available to the defense, it was not error for the prosecutor to comment on Hunt's failure to produce these witnesses.
We further observe that, although the prosecutor commented specifically on the absence of Hunt's wife as a witness, this comment is not deemed erroneous by the Alabama Supreme Court's ruling in Billingsley v. State, 402 So.2d 1060 (Ala. 1981). Although the comment before us appears to be in violation of the principle in Billingsley, Hunt failed to enter a proper objection. The portion of the argument specifically directed to the absence of Hunt's children as witnesses was proper. In objecting to the comment as a whole, Hunt failed to separate the permissible, material matter from the objectionable portion of the prosecutor's comment calling attention to the absence of Hunt's spouse. Accordingly, Hunt's objection was overruled without error. See Emerson v. State, 281 Ala. 29, 198 So.2d 613
(1967); Weeks v. State, 432 So.2d 528 (Ala.Cr.App. 1983).
Hunt further asserts the impropriety of the prosecutor's comment on the ground the comment was made during the prosecutor's rebuttal summation, and consequently, he had no opportunity to explain the absence of the witnesses. This ground for objection is presented for the first time on appeal. It has long been held that specific grounds of objection waive all grounds not specified, and the trial court will not be put in error on grounds not assigned. Oatsvall, 327 So.2d at 739.
Our consideration of the issues raised on appeal convinces us that the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] See Williams v. State, [Ms. 6 Div. 761, May 31, 1983; extended, July 5, 1983] (Ala.Cr.App. 1983), cert. granted (Ala. 1983).
[2] See Inzer v. State, 447 So.2d 838 (Ala.Cr.App. 1983), cert. denied, 447 So.2d 850 (Ala. 1984). *Page 1089